## Vanderlin *v.* Hovis, Appellant.

[Marked to be reported.]

*Oil lease—Parol evidence to explain written instrument—New lease given to perfect title under old.*

An oil lease, executed July 1, 1884, provided that the lessee should drill a well within thirty days from the execution of the lease, or in default thereof pay to the lessee $200 per annum until work was commenced. In 1890, the lessor brought suit against the lessee to recover four years' payments of $200 each. At the trial the lessor offered in evidence a lease dated July 1, 1884, directly from himself to defendant, who was the assignee of the other lease. The second lease contained the same covenant as the first lease as to the commencement of operations within thirty days, and the payment of the annual rental in case of default. Plaintiff claimed that although the lease was dated July 1, 1884, it was in fact executed on April 9, 1886, and that as defendant had not drilled any well within thirty days of the latter date, plaintiff was entitled to recover.

Defendant thereupon offered to show that the second lease was a mere substitute for the first, made by advice of counsel, so as to enable defendant to borrow money on a mortgage; that defendant's title was somewhat confused under the various assignments of the interests of the original lessees; that defendant requested plaintiff to make a new lease directly to himself, and upon the same terms as contained in the former lease, in

order that a more satisfactory mortgage could be executed to the person lending the money; that plaintiff agreed to make the lease as requested; that the terms of the first lease had been fully complied with, and that plaintiff had never demanded rent until the present suit was brought. The court rejected all of defendant's offers.

*Held* to be error. The offers were relevant as they tended to show the circumstances and reasons for the execution of the new lease, that it was given for the purpose of confirming and perfecting defendant's title under the old lease, and not in any sense as altering, contradicting or changing that title. Indeed plaintiff was quite as much in need of explanatory assistance in parol to enforce a recovery, as defendant was to establish his defence.

Argued Oct. 17, 1892. Appeal, No. 56, Oct. T., 1892, by defendant, Monroe Z. Hovis, from judgment of C. P. Butler Co., June T., 1890, No. 83, on verdict for plaintiff, Robert Vanderlin. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Assumpsit to recover $800 as rent under oil lease, from May 9, 1886, to May 9, 1890.

The facts appear by the opinion of the Supreme Court.

At the trial, before HAZEN, P. J., numerous offers of proof were made by the defendant, and rejected by the court, all of which were finally summarized in the following offer:

" For the purpose of shortening the case we will make our offer as a whole. Defendant's counsel now propose to prove by the witness on the stand that on July 1, 1884, Robert Vanderlin made a lease of 275 acres of land in Marion township, Butler county, to Gilbert, Sweetapple and himself (Robert Vanderlin, he signing it both as grantor and grantee) in writing; that this lease, by various assignments afterwards, came into the possession of the defendant in this case. That he entered into possession by virtue of his assignments on March 9, 1885—he entered into possession of this lease and has been in possession of it from that time up to the present time. That under the original lease the wells provided for in the lease were drilled on the property. That some short time prior to April 9, 1886, defendant made application .to a bank in Franklin, Pa., for a loan of money, and offered to put up his leases that he held, among them this Vanderlin lease, as security for the money he wished to get from the bank. The matter was referred by the bank officers to C. Heydrick, Esq., an attorney of

Franklin, to examine the title. That the title papers were laid before Mr. Heydrick, and he found numerous assignments of the original lease existing that were not acknowledged before the title came into Mr. Hovis, the defendant. That to save the expense of hunting up one of the assignors and the expense of recording so many assignments, Mr. Heydrick directed the defendant to go to Mr. Vanderlin and get from him a new lease to be dated the same date as the original lease, to wit, July 1, 1884, upon the same terms and conditions, putting the title direct from Vanderlin to Hovis, for the purpose of placing a leasehold mortgage on the property. That in pursuance thereof the defendant went to Mr. Vanderlin and told him what he wanted—explained that it was for the purpose of saving expense of recording papers, securing acknowledgments, etc. Mr. Vanderlin agreed to give him the lease requested. Mr. Vanderlin and Mr. Hovis then went to the bank of Mr. McKee, in Clintonville, and stated the matter over to Mr. Kerr, the cashier of the bank, requesting him to prepare the new lease, leaving the old lease with him, so that he might make the new one on the same terms and conditions and the same date, the only difference being the lease to Hovis instead of Gilbert, Sweetapple and Vanderlin. That Vanderlin and Hovis left Mr. Kerr, and in the evening of the same day came back to the bank where the lease was prepared. The lease was then signed by both parties and delivered for the purpose named, acknowledged the same day, placed on record and the loan of money obtained. That there was no surrender of the original lease, Mr. Hovis retaining possession of it and the different assignments down to the present time, and now has possession of it and them. To be followed by proof of the original lease and the various assignments of the lease that landed the title finally in Mr. Hovis, and that the covenants of the lease have been complied with. That the new lease was dated back to the date of the original lease and was simply a duplicate of the old contract. This for the purpose of obtaining this new lease, and that there was no change in the terms under which Mr. Hovis held possession of the leasehold, and it was but for the accommodation of Mr. Hovis, to save the expense, as has been stated, and that therefore there is no rental due upon this lease to the plaintiff in this case. That the purpose for which this lease was to be

used was known at the time by Mr. Vanderlin and so understood by him, and he consented thereto. ·

"Plaintiff's counsel object to the offer as a whole, because it is incompetent and irrelevant, and object to it specially as to parts, because the proposition is to prove by parol what is in writing. It is objected to in parts again because it is giving the understanding or mental motive of the witness alone. Again, because it is not responsive to any demands of the plaintiff; is not in answer to any issue that is formed, nor is it authorized by any law or rule of evidence known to us. That the purpose of the lease was wholly immaterial, and for that matter, whether known or unknown to Mr. Vanderlin, is not in issue. He made the lease as written, and how it was used or intended to be used is a matter that did not concern him then or now."

Objection sustained and exception. [12]

Defendants then offered to prove execution of the original lease, assignments, etc., and that the covenants had been complied with. Rejected. Exceptions. [13–16]

Verdict and judgment for plaintiff for $300. Defendant appealed.

*Errors assigned* were (1–16) rulings on evidence, quoting bills of exception.

*Newton Black, H. H. Goucher* with him, for appellant.— Where there is no fraud alleged in obtaining a writing for a particular purpose, parol evidence is admissible to resist the fraudulent use of a writing for another and different purpose from that intended by the parties: Hoopes v. Beale, 90 Pa. 82; Renshaw v. Gans, 7 Pa. 117; Parke v. Chadwick, 8 W. & S. 96.

In order to pave the way for the reception of oral testimony it is not necessary to prove that a party was actuated by a fraudulent intention at the time the writing was made. His original object may have been honest but if to procure an unfair advantage he uses it for another purpose it is such a fraud as will let in evidence of the real intent of the parties: Lippincott v. Whitman, 83 Pa. 244; Oliver v. Oliver, 4 Rawle, 141; Rearich v. Swinehart, 11 Pa. 233.

The case should have been submitted to the jury on the evi-

dence offered and the disputed facts there determined, and plaintiff not allowed to use the instrument for a purpose not intended, or even thought of when executed: Phillips v. Meiley, 106 Pa. 536.

*John M. Thompson, J. C. Vanderlin* with him, for appellee.— Plaintiff does not allege anywhere that the rentals provided for in the lease sued on were paid or had been released. Instead of denying the plaintiff's claim or the validity of the lease, he alleges he had and still has another lease of the same land. This may be, but the plaintiff is not suing on another lease, hence that is immaterial. Nor is the allegation that he is in possession any better. His possession is not in issue.

OPINION BY MR. JUSTICE GREEN, November 11, 1892:

By the expressed terms of the original lease, made July 1, 1884, the only obligation to pay the annual sum of $200 was by way of default in not commencing operations for drilling within thirty days. The stipulation on that subject is in the following words: "The parties of the second part agree to commence operations for said drilling purposes within thirty days from the execution of this lease or thereafter pay the party of the first part $200 per annum until work is commenced, to be paid quarterly, and after work is commenced, it is to be prosecuted with due diligence until well is completed." A copy of this lease, with the numerous assignments of the various interests of the lessees, is attached to the affidavit of defence, and the averments of the affidavit were to the effect, that the lessees entered upon the demised premises and, within the thirty days mentioned in the lease, bored two wells one of which produced oil, and was carried on with a constant production from that time to the time of filing the affidavit in May, 1890. This being so, of course, no part of the annual sum of $200 ever became due or payable under the lease.

On the trial the plaintiff gave in evidence a lease, dated July 1, 1884, directly from the plaintiff to the defendant for the same premises, which was substantially a duplicate of the first lease, and containing the same covenant as the first lease as to the commencement of operations within thirty days, or on failure to do so, to pay the same annual sum of $200, and rested, claiming that although the lease was dated July 1, 1884, it was in fact executed on April 9, 1886, and that as

the defendant had not drilled any well within thirty days of that date, the plaintiff was entitled to recover four years' payments of $200 each as for a violation of the stipulation on that subject.

Thereupon the defendant made numerous offers of testimony to show that the second lease was a mere substitute for the first one, made by the advice of counsel to whom the defendant had applied for the purpose of making a loan upon a mortgage of this and other leaseholds. That in consequence of the somewhat confused condition of the defendant's title under the various assignments of the interests of the original lessees, counsel advised that inasmuch as the defendant held all the interests except the one third that belonged to the plaintiff, instead of perfecting the assignments and recording them all, the defendant should ask the plaintiff to make a new lease directly to the defendant and upon the same terms as contained in the former lease, in order that a more satisfactory mortgage could be executed to the person lending the money. That the defendant saw the plaintiff and explained what he wanted, and the plaintiff agreed to make the lease as requested, and that this was the way in which the second lease was given. That the terms of the first lease had been fully complied with, and therefore no part of the annual sums of $200 was due to the plaintiff. That the plaintiff had never demanded any part of said annual sums until the present suit was brought in May, 1890, and that the first lease had never been surrendered by the defendant or demanded by the plaintiff. Other matters of a kindred and corroborating character were contained in the offers of proof but it is unnecessary to repeat them here.

For some reason not expressed by the learned court below, and which we are unable to understand or appreciate, every one of the defendant's offers of testimony, sixteen in number, was rejected. The objections to their admissibility were quite trivial and entirely untenable, and whether the learned court acted upon those objections or upon other considerations, we are clearly of opinion that every one of the offers should have been received and that it was grave error to reject them. The objections seem to be principally that the offers were immaterial and irrelevant, but in point of fact they were very material and entirely relevant, as they tended to show the precise circumstances and reasons for the execution of the new lease,

that it was given for the very special purpose of confirming and perfecting the defendant's title under the old lease, and not in any sense as altering, contradicting or changing that title. That it would be productive of a gross fraud upon the manifest rights of the defendant to permit this second lease to destroy and defeat his title under the first lease, in view of the facts offered to be proved, is too plain for argument. In every technical sense the offers of testimony were perfectly legitimate. Indeed the second lease was practically insensate without parol explanations. How could a lease which was dated in 1884 and contained a covenant to commence operations within thirty days from its date, be violated by a breach which did not commence till thirty days after April 9, 1886 ? What reason existed for dating a lease actually executed in 1886, back to 1884, and whose operative words spoke only from the latter date ? How could a single step be taken to enforce its covenants without a preliminary explanation by testimony resting in parol, showing why, though it literally spoke from July 1, 1884, it was only to be interpreted as speaking from April 9, 1886 ? On the face of the paper, the defendant had made no default in commencing operations within thirty days from July 1, 1884, and had never incurred any obligation to pay any part of the $200 annual sums. How then could the plaintiff recover any part of those sums ? Only by parol evidence showing that although the paper literally provided for a breach within thirty days from July 1, 1884, it was intended to provide for a breach occurring within thirty days from April 9, 1886. It was not enough to prove that the paper was actually executed in April, 1886, because although executed at that time it nevertheless by its literal terms related back to July 1, 1884, as the incipiency of the rights it conferred and the terms it required. It is very plain to us that the plaintiff is quite as much in need of explanatory assistance in parol, to enforce a recovery, as the defendant is to establish his defence. Other manifest considerations are entirely applicable, but it is unnecessary to repeat them. We are clearly of opinion that every one of the offers of testimony was legitimate and that it was serious error to reject them. We sustain all the assignments of error.

Judgment reversed and new venire awarded.